**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                        :

**UNITED STATES OF AMERICA,**       :      **20 Cr 153 (JSR)**
                                          :

             **-v-**               :
                                          :

**KYSHAWN ROBINSON**           :
                                          :

          **Defendant.**        :
-------------------------------------------------------X


## <u>SENTENCING MEMORANDUM</u>

Submitted by:
Xavier R. Donaldson
Attorney for Kyshawn Robinson
1825 Park Avenue, Suite 1102
New York, NY 10035
212-722-4900
xdonaldson@aol.com

# Donaldson & Chilliest, LLP
## 1825 Park Avenue, Suite 1102
### New York, NY 10035
### 212-722-4900
### 212-722-4966

May 6, 2021

**VIA ECF**
Honorable Jed S. Rakoff
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>          Re:     *United Stated v. Kyshawn Robinson*
>                  20 Cr 153 (JSR)

Dear Judge Rakoff:

Please accept this letter on behalf of Mr. Robinson regarding his sentencing to be held on May 11, 2021.

**ANALYSIS OF 18 USC 3553 FACTORS**

18 USC Section 3553 calls upon this Court to consider specific factors, including the appropriate Sentencing Range, to impose a sentence on a defendant that is "sufficient but not greater than necessary" to comply with the goals of sentencing. *See, 18 USC Section 3553(a)*. Indeed, any sentence imposed by the Court must be based upon an individualized assessment based upon the unique factors presented. *See*, *U.S. v. Gall*, 552 US 38, 39 (2007).

Significantly, the United States Sentencing Guidelines merely reflect a "rough approximation of sentences that might achieve section 3553(a)'s objectives". *See*, *Rita v. United States* 551 US 338, 350 (2007). The Court "may not assume that the Guidelines Range is reasonable." *Gall*, at 50. As the Supreme Court declared in *Nelson v. United States*, 550 U.S. 350 (2009), "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id*., at 351 (emphasis in original).

After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the District Court should then consider all of the 3553(a) factors to determine whether they support the sentence requested by a party". *U.S. v. Gall*, at 49-50. It is our

opinion that after considering all the factors articulated in 18 USC 3553, a sentence of *36 months* is "sufficient but not greater than necessary" for Mr. Robinson's participation in this criminal conduct.

(1)     NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY OF AND CHARACTERISTICS OF THE DEFENDANT

**Nature and circumstances of the offense**

As the Court is aware, on February 9, 2021, Mr. Robinson pleaded guilty to Conspiracy to commit a robbery in violation of 18 USC § 1951 under Count 2 of the Indictment. Specifically, Mr. Robinson acted drove others to a location knowing that they were going to commit a robbery and then drove them away from that location after the robbery was completed.

Mr. Robinson wholeheartedly admits his participation in this conspiracy to commit a robbery of a commercial establishment located in Bronx County. Mr. Robinson would also like the Court to be aware that while he did participate in the conspiracy to commit the robbery, he did not point any firearms at the victims, did not restrain them in any way and did not threaten any victims with physical injury. We believe that there is a *stark difference* between the person that wielded the firearm and subjected the victims to significant trauma and the person that drove the car to effectuate the robbery. In this case, Mr. Robinson was the driver and as such fully accepts responsibility for his participation in the commission of this Robbery.

**Characteristics of the Defendant**

Mr. Robinson was born on November 22, 1993 in Brooklyn, New York to Chama Robinson and Ronnie Dennis. At a very early age, Mr. Robinson's parents separated because his father, Mr. Dennis was an alcoholic and physically abusive to his mother.

Unfortunately, Mr. Robinson did not have any real relationship with his paternal father and has not spoken to him in years. He primarily grew up with his mother, Ms. Chama Robinson. Ms. Robinson intended to be a giving and caring mother but may have taken on too much of a responsibility trying to raise several children at once.

Specifically, when Mr. Robinson was growing up, his mother worked at the Javitz Center in Manhattan. This employment was not enough, however, to economically provide for Mr. Robinson, his brother Jaynell Dennis and their six (6) cousins.  Yes, Ms. Robinson was not only providing for her own children but six (6) other kids as well.  This enormous responsibility unfortunately resulted in Mr. Robinson recalling several instances where he, his brother and his cousins did not have sufficient food or appropriate clothing.  Indeed, during some winters, the children had to share coats.

Not only did Mr. Robinson suffer the trauma of hunger and improper clothing, on occasion, Mr. Robinson's mother would assault he and his cousins with sticks and belts

confusing this physical activity with discipline. Mr. Robinson believes that the frustration of taking care of several children in a small home not only caused his mother to physically assault them but to verbally abuse them on a daily basis. As a result of the significant trauma Mr. Robinson was experiencing at home, Mr. Robinson began smoking marijuana at approximately the age of 11. And as is commonly the case, Mr. Robinson's marijuana use was a gateway drug to the use of ecstasy for approximately one (1) year. Then alcohol abuse for several years.

Mr. Robinson also had a learning disability since he was a young kid and received SSI as a result. While his mother indicated that she did all she could to address Mr. Robinson's learning disorder when he was young, Mr. Robinson's disorder has never been properly treated. After attending high school until the 11th grade Mr. Robinson dropped out due to his significant learning disability and frustration with his inability to properly focus on his tests. Not coincidentally, very soon after Mr. Robinson dropped out of school he earned his first criminal conviction. We believe that the enormous trauma suffered by Mr. Robinson as a child is directly related to his spiral into criminal activity.

Mr. Robinson was also diagnosed with depression, anxiety and post-traumatic stress disorder and prescribed medication that he was taking immediately before he was arrested. This, Mr. Robinson, believes is a result of a horrific assault he received at the hands of correction officers while incarcerated at Rikers Island.

Mr. Robinson's mother, as do we, firmly believe that with proper treatment and time, Mr. Robinson will do better. In fact, his programming while incarcerated at MDC is also an example of that. Mr. Robinson's fiancé, Ms. Rose also notes that Mr. Robinson is a good father, partner and son and always assisted those in need. Ms. Rose currently works as sales representative at a local cell phone store and is committed to ensuring that Mr. Robinson obtains legal employment upon his release.

Finally, Mr. Robinson has a son named Mahki Kyshawn Robinson, 5, from a prior relationship with Nigeria Campbell. While Mr. Robinson is not currently in a relationship with Ms. Campbell, Mr. Robinson has a fantastic relationship with his son. Mr. Robinson indicates that it is his responsibility to be a better father to his son than his father was to him. Importantly, Mr. Robinson believes that his presence in his son's life would help ensure that his son does not experience the enormous trauma that he experienced and also will help to ensure that his son makes appropriate choices when challenged by aggressive young men and men assuming the positions of permanent light poles in his community.

**Afford adequate deterrence to criminal conduct**

Mr. Robinson completely accepts and understands the seriousness of this crime. Moreover, like many other similarly situated individuals, Mr. Robinson faces significant collateral consequences as a result of this federal felony conviction. Indeed, because of this federal conviction, Mr. Robinson will not be able to obtain certain state or federal licenses, he will forever be labeled a federal felon, he will be denied significant

employment opportunities making upward mobility significantly more challenging, he may be denied certain federal governmental benefits, he may be denied certain home loans or other economically advantageous avenues as well as denial of certain housing opportunities.

We also believe that being incarcerated for over 14 months in almost continual SHU like conditions, along with the deprivation of family contact is sufficient to deter any one from committing this type of conduct.

A **36 month sentence and a term of supervision** along with the significant collateral consequences attendant to this first federal criminal conviction will serve to deter Mr. Robinson and any similarly situated person from participating in similar conduct. We know that Mr. Robinson wants to be a productive member of society because since he has been in custody, Mr. Robinson has completed the following courses: Resume drafting; Communication skills; Effective Eating; Finance modification; and a Proper Parenting course. Moreover, Mr. Robinson has been working frequently while incarcerated to ensure that he passes the time in a productive matter. Specifically, Mr. Robinson has been working as a porter where he cleans the showers, mops the floors and otherwise ensures that his area (and others) are as clean as possible. He has also been working on an idea related to starting a business upon his release.

An extended sentence of prison (63 months), however, would seem to serve the opposite effect on Mr. Robinson as we believe that society is not served in any productive way by incarcerating individuals who suffered such extreme trauma as a youth. Put another way, society is not better served with Mr. Robinson inside of a federal prison for more than sixty-three (63) months. Rather, society would be better served with Mr. Robinson being assisted to take the appropriate steps to address his trauma.

**Protect the public from further crimes of the defendant**

Rehabilitation begins after a person is incarcerated related to criminal activity. In this case, while in BOP custody, Mr. Robinson specifically took steps to better himself for life once he is released. Specifically, as mentioned above, while in federal custody at MDC, Mr. Robinson participated in several courses designed to prepare him for a production life upon his release. Plainly, Mr. Robinson was not simply sitting in jail, he was using his time to begin the rehabilitation process.

Mr. Robinson also understands that his involvement in this conspiracy has major consequences including a life long stigma of being a convicted federal felon. But, it is our understanding that Mr. Robinson maintains family support. Indeed, the "single best predictor of successful release from prison is whether the former inmate has a family relationship to which he can return…" *"Recidivism and Parental Engagement", supra,* at 196-197. Mr. Robinson enjoys a healthy relationship with his fiancé and his son. In fact, he is extremely close to his son and family. Indeed, after his incarceration in this matter and prior to the COVID lockdown at MDC, Mr. Robinson spent considerable time with his fiancé and son. Within a few weeks after Mr. Robinson was arrested, he was denied any and all contact with both his fiance and son. We believe that after this

significant, cruel and unusual detention during the COVID lockdown, time away from his family, proper treatment for his past trauma and federal supervision, Mr. Robinson will be a very low risk of recidivist behavior.

**Provide defendant with needed educational, vocational, medical care or other treatment**

As previously indicated, after his arrest in this matter, Mr. enrolled in several programs designed to provide him a foundation to become productive once released. Essentially, it is crystal clear that Mr. Robinson wants to do better. As such, we would suggest that the Court strongly urge the Bureau of Prisons to allow Mr. Robinson to participate in any vocational or educational courses that would allow him to increase the possibilities of a successful re-entry into society upon his release.

Additionally, as the Court is aware, Mr. Robinson has a learning deficiency and has suffered significant trauma as a child that we believe contributed to his participation in criminal activity. Moreover, Mr. Robinson was smoking marijuana until he was arrested in this matter. Consequently, we are asking the Court to strongly recommend that Mr. Robinson be allowed to participate in the following: any and all available Drug Treatment programs including RDAP; any and all educational programs; and any programs that will help him address his PTSD and anxiety issues. We also are requestion that the Court strongly suggest to the BOP that Mr. Robinson be housed in a facility as close to New York City as possible to encourage continued family and friend visitation.

## <u>BELOW GUIDELINES SENTENCE DUE TO COVID-19</u>

As the Court is aware, Mr. Robinson was arrested in February of 2020. Prior to that arrest, Mr. Robinson had almost daily contact with his fiancé, son and mother. There is no doubt that Mr. Robinson was very close to his son. After he was detained pursuant to this case in February of 2020, his close contact with his family continued. In fact, the close contact Mr. Robinson had with his family is what helped him thru the lonely days and harsh nights at the infamous MDC facility. Almost every day from February 2020 to March 2020, Mr. Robinson spoke to his son. Prison is supposed to be punishment yet also humane. In that single month, even though incarcerated, Mr. Robinson at least felt like a human being.

Unfortunately, within one (1) months of his detention, MDC was placed on a complete lockdown. The world as we knew it changed in an instant. He was completely cut off from his family. Each hour felt like 2 hours and each day felt like 2 days. COVID-19 arrived with a vengeance. There can be no doubt that March 2020, the month COVID-19 became a reality in this Country, forever changed incarceration for defendants in the United States. The measures necessary to slow the progress of the disease – social distance, masks, adequate hygiene – were and still are impossible inside a prison. Crowded into small areas, communal dining, sleeping in close quarters, toilets shared by dozens of inmates, phones passed from one inmate to another, shared computers, insufficient sanitizing wipes, limited soap and cleaning products are rampant in prisons

across the United States. Due to COVID-19, jail conditions which are objectively harsh anyway, became even more harsh. MDC was not spared.

During this COVID-19 pandemic, Mr. Robinson experienced several lock downs, no attorney visits, no family visits, limited showers and often times no clean clothes. Moreover, the complete and daily anxiety that Mr. Robinson experienced while being locked in a "petri dish" type environment is unimaginable. Couple this with the extreme assault that Mr. Robinson experienced at Riker's Island at the hands of Correction Officers and Mr. Robinsons pre-existing trauma, Mr. Robinson has been suffering immensely while housed at MDC. The public were able to stay home, social distance, change their masks, choose what toilet to use, wash their hands as much as possible and avoid people. Mr. Robinson was unable to do any of that. Most importantly, for the last fourteen (14) months, Mr. Robinson has been unable to *see or touch* any of his family members. To be clear, for several months at a time, in the most humane and just country on earth, Mr. Robinson was not able to speak to or see his son or mother. This circumstance, a sharp departure from Mr. Robinson's former daily routine, made the last 14 months of incarceration absolutely excruciating. There is no wonder why ***Judge Oetken in*** <u>***United State v. Daniel Gonzalez***</u>***, 18 Cr. 669, (JPO), 4/2/21, Dkt 249 (transcript unavailable at this time) commented during Mr. Gonzalez recent sentencing proceeding that time served during COVID should count at least 1.5 to 2 times actual time.*** We wholeheartedly agree. While we are not seeking a downward departure due to the COVID-19 pandemic, we definitely believe that Mr. Robinson's incarceration during the pandemic warrants a significant downward variance and he should be credited at least 1.5 days for every day he served from February 2020 to his sentencing.

Indeed, several Courts in this District have reduced sentences based on the pandemic and unduly harsh pretrial conditions of detention. See e.g., *United States v. Juan Carlos Aracena de Jesus*, 20 Cr. 19 (PAE) (S.D.N.Y. July 1, 2020) (substantial downward variance from 30 to 37 months to six months in part because of the "horrific conditions" at MCC during the pandemic). See also, *United States v. Morgan*, 19 Cr. 209 (RMB)(S.D.N.Y. May 5, 2020)(cutting the sentence to less than half of the low end of the Guidelines based in part on conditions at MDC during the pandemic and condemning the conditions at MCC and MDC prior to the current crisis); *United States v. Robinsons*, 19 Cr. 863 (VSB),(S.D.N.Y. May 4, 2020)(reducing the length of the sentence in part based on conditions at MCC during the COVID-19 crisis); and *United States v. Pierson*, 14 Cr. 855 (LTS)(S.D.N.Y. May 4, 2020)(same for defendant detained at MDC).

To be sure, the future in the penal system does not look bright for inmates: cleanliness and social distancing will remain difficult, if not impossible, and while there does appear to be vaccinations becoming available to inmates, it appears in some jurisdictions, inmates are the last to receive them.

## <u>CONCLUSION</u>

Mr. Robinson is a young man who admittedly and wholeheartedly admits his guilt, sincerely regrets his participation in this conspiracy and stands prepared to be

sentenced to a federal felony that will undoubtedly alter his future. To be clear, we also believe that a sentence of **36 months** is the appropriate sentence in this matter for the following reasons:[1]

-   Mr. Robinson will suffer significant collateral consequences;
-   Mr. Robinson did not enter the establishment;
-   Mr. Robinson did not brandish a firearm at any victim;
-   Mr. Robinson did not restrain any victim;
-   Mr. Robinson has served over 14 months in jail under severely harsh conditions due to the COVID-19 pandemic;
-   Mr. Robinson was not able to see or speak to his family for months at a time;
-   Mr. Robinson has sought and participated in a number of programs while incarcerated at MDC;
-   Mr. Robinson has obtained employment while in MDC;
-   Mr. Robinson has family support;
-   Mr. Robinson will likely have gainful employment upon his release;
-   To avoid Sentencing Disparities in that a much more culpable, firearm brandishing co-defendant received a 31 month downward variance; and
-   Mr. Robinson has suffered significant and untreated trauma as a youth that we believe substantially contributed to his criminal behavior in this case.

Respectfully submitted,

/s/ *Xavier R. Donaldson*

Xavier R. Donaldson
Attorney for Kyshawn Robinson

cc:     Assistant U.S. Attorney
        via email

---

[1] Mr. Robinson's co-defendant, Mr. Williams, had a Guidelines Range of 151-188 months, was a career offender and actually brandished a firearm at the victims in this case. This Court ultimately sentenced Mr. Williams to 120 months of incarceration: 31 months below his guidelines sentence.